IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF ARKANSAS
BATESVILLE DIVISION

| | |
|---|---|
| IN RE: MARTY K. BULLARD, Debtor | 1:10-bk-12889 E |
| | CHAPTER 7 |
| JONATHAN D. HIDY | PLAINTIFF |
| v.          AP NO:  1:10-ap-01072 | |
| MARTY K. BULLARD | DEFENDANT |

### MEMORANDUM OPINION

Now before the Court is the *Complaint Objecting to the Dischargeability of [sic] or, in the Alternative, to the Dischargeability of Debtor* ("**Complaint**") filed by Johnathan D. Hidy ("**Plaintiff**") on May 7, 2010, and the *Response to Adversary Proceeding* ("**Answer**") filed by Marty K. Bullard ("**Defendant**" or "**Debtor**") on June 2, 2010.  In the Complaint, the Plaintiff argues that the debt owed to him by the Debtor is non-dischargeable pursuant to 11 U.S.C. § 523(a)(6), or in the alternative, that the Debtor should not receive a discharge pursuant to 11 U.S.C. § 727.  The Court held a trial on this matter on November 18, 2010.  Making appearances at the trial were Lindsey Castleberry for the Plaintiff, and Paul Schmidt, Sr., for the Defendant.  At the conclusion of the trial, the Court granted the parties' request to submit post-trial briefs and took the case under advisement.  For the reasons stated below, the Court finds that the Plaintiff failed to meet its burden of proof that the Debtor's actions were malicious, as that term has been defined for purposes of 11 U.S.C. § 523(a)(6), and as such, the Plaintiff's judgment debt is not excepted from discharge.

Entered On Docket: 01/21/2011

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), (b)(1) and 28 U.S.C. § 1334(a). This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(I), (J). The following opinion constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

## FACTS

On July 16, 2008, Mr. Hidy and Mr. Bullard met with a group of their friends and co-workers for dinner at a public restaurant. The party ate dinner, drank several beers, and then traveled to a second establishment, referred to by the parties as "Josie's." At Josie's, the group drank and conversed for several hours at an outdoor "tiki-bar table." This table was described as being between four and six feet wide, and covered by a thatched roof. Mr. Hidy and Mr. Bullard were positioned at opposite ends of the table. At some point in the evening, the topic of conversation turned to unions and labor organizations.

It is at this point that the Plaintiff and the Defendant's accounts of the events begin to conflict. According to the Plaintiff, the conversation about unions was taking place between Mr. Bullard and one of the other members of the group, Mr. Darren Stephens, who was sitting next to the Plaintiff. The Plaintiff testified that this conversation had become a "heated argument" and Mr. Bullard was acting belligerently. At this point, Mr. Hidy told Mr. Bullard that "he better watch himself," to which Mr. Bullard responded that he was watching himself, and then threw his glass. According to Mr. Hidy, the glass was thrown directly at

him, and it shattered either on impact with his face, or with an arm that he put up to block it.

According to the Defendant, the conversation was nothing more than a "debate." By Mr. Bullard's recollection, the conversation had been ongoing for a period of 30 to 45 minutes before the glass throwing incident took place, and he recalled that Mr. Hidy had been involved in the conversation the entire time. Mr. Bullard testified that Mr. Hidy's harassing comments to him within the conversation were what eventually caused him to stand up and throw the glass out of frustration. Although he admits throwing the glass, Mr. Bullard explained that he threw the glass down at the table, not at Mr. Hidy or anyone else. As support for this, Mr. Bullard explained that he could not have easily directed his throw at Mr. Hidy because when he stood up the thatched roof of the table blocked his view of Mr. Hidy. Additionally, Mr. Bullard explained that he did not intend to hit anyone with the glass, but that he knows his actions were in reckless disregard of the safety of others, and that he "took a chance of hitting anybody." He expressed remorse at the outcome of the event, stating that he was "sorry it happened" and that "it was unfortunate." Further, Mr. Bullard explained that this incident has caused him to lose his friends, his home, his job, and nearly his life due to an attempted suicide.

Despite the abundance of conflict in the parties' testimonies, it was undisputed that after the glass broke, a piece of it went into and through Mr. Hidy's eye. The parties then engaged in a brief physical altercation. Neither party provided much explanation of the physical altercation beyond Mr. Bullard's testimony that he let loose of Mr. Hidy after

recognizing that Mr. Hidy was bleeding. An ambulance was called and Mr. Hidy was taken to the emergency room where he received medical treatment for the injury to his eye. Over time, Mr. Hidy underwent three to four surgeries, but ultimately lost all vision in the injured eye.

Several months after the event, criminal charges were filed against Mr. Bullard (CR-2008-145). On July 10, 2009, Mr. Hidy filed a civil lawsuit (CV-2009-221-2) against Mr. Bullard in the Circuit Court of Independence County, Arkansas, for the intentional tort of battery. On October 12, 2009, Mr. Bullard entered a plea of guilty to a criminal charge of battery in the second degree, as defined by Ark. Code Ann. § 5-13-202. As a result of his plea, the state court sentenced Mr. Bullard to five years of probation and ordered him to pay a $3000 fine (the "**Criminal Judgment**"). Mr. Bullard testified that he entered the guilty plea, in part, because he did not feel that he would receive a fair trial, but also because he wished to avoid the uncertainty and expense of a trial.

After the criminal case was resolved, Mr. Bullard stipulated to liability for battery in the civil lawsuit, and on August 31, 2010, a jury trial was held in order to determine the amount of damages.[1] The jury awarded the Plaintiff $204,204.11 in damages (the "**Civil Judgment**"). As specifically set out in the Civil Judgment, the award consisted of $75,000 for permanent injuries; $84,204.11 for medical bills; $10,000 for pain and suffering; and

---

[1] Although the jury trial took place after the filing of the Debtor's bankruptcy case, the Plaintiff was granted relief from the automatic stay on June 7, 2010, in order to pursue his cause of action (docket #27).

4

$35,000 for scars, disfigurement, and the visible results of the injury. Although the judgment did not state the jury's determination with regard to punitive damages, the jury was instructed on the issue, and elected not to award punitive damages.[2]

On April 21, 2010, Mr. Bullard filed a voluntary chapter 7 bankruptcy case (1:10-bk-12889). The Plaintiff initiated this adversary proceeding against the Defendant on May 7, 2010, seeking to have the debt determined non-dischargeable under 11 U.S.C. § 523(a)(6), and requesting that the Court deny the Debtor a discharge pursuant to 11 U.S.C. § 727.

## ANALYSIS

The initial determination that the Court must make is whether the Debtor's debt to the Plaintiff is excepted from discharge pursuant to 11 U.S.C. § 523(a)(6).[3] Under § 523(a)(6), the Court must except this debt from the Debtor's discharge if it resulted from a "willful" and "malicious" injury. However, if the willful and malicious requirements of § 523(a)(6) were previously decided by the state court in either the Criminal Judgment or the Civil Judgment, the court will be precluded from making this determination by the doctrine of collateral estoppel. Finally, the Court must determine whether the Debtor should be prevented from receiving a discharge pursuant to § 727.

---

[2] When the information regarding punitive damages was introduced and accepted as part of the record at the trial in this Court, the Court and parties referenced the method of acceptance as judicial notice. The Court notes that it was clear from the dialogue that the parties were requesting that the evidence be accepted as a stipulation of fact, and not on the basis of judicial notice by the Court.

[3] All statutory references hereinafter shall be to Title 11 of the United States Bankruptcy Code, unless otherwise noted.

### A. COLLATERAL ESTOPPEL

The doctrine of collateral estoppel, or issue preclusion, applies in adversary proceedings as a bar to issues already decided in a prior state court action. *Grogan v. Garner*, 498 U.S. 279, 284 n.11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Hudson*, 428 B.R. 866, 869 (Bankr. E.D. Ark. 2010); *In re Scarborough*, 171 F.3d 638, 641 (8th Cir. 1999). The purpose of collateral estoppel is to relieve the parties of "the expense and vexation [of] attending multiple lawsuits, [to] conserve judicial resources, and [to] foster reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. U.S.,* 440 U.S. 147, 154-55, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979).

In making a determination on preclusion, the deciding court must apply the substantive law of the state in which the prior judgment was entered. *In re Stage*, 321 B.R. 486, 493 (B.A.P. 8th Cir. 2005). In Arkansas, a party asserting the doctrine of collateral estoppel must prove four elements:

> (1) the issue sought to be precluded must be the same as that involved in the prior action;
> 
> (2) the issue must have been litigated in the prior action;
> 
> (3) the issue must have been determined by a valid and final judgment; and
> 
> (4) the determination must have been essential to the prior judgment.

*In re Hudson*, 428 B.R. 866, 869 (Bankr. E.D. Ark. 2010); *Lovell v. Mixon*, 719 F.2d 1373,

1376 (8th Cir. 1983). In this case, the state court has entered two separate judgments – the Criminal Judgment and the Civil Judgment. Both must be evaluated for their potentially preclusive effect. The Court will be precluded from making a determination under § 523(a)(6) if the issues of willfulness and maliciousness were determined in either of the state court actions.

1. *The Criminal Judgment*

The fourth element of collateral estoppel – the issue determined was essential to the prior judgment – is not present in the Criminal Judgment. "Collateral estoppel does not preclude litigation of previously decided issues unless the prior judgment could not have been rendered absent a conclusive finding as to the particular issue." *In re Hudson*, 428 B.R. at 870 (*citing Beaver v. John Q. Hammons Hotels, L.P.,* 355 Ark. 359, 138 S.W.3d 664 (2003)). On October 12, 2009, Mr. Bullard entered a plea of guilty to a criminal charge of battery in the second degree. In Arkansas, a person is guilty of committing battery in the second degree if:

> (1) With the *purpose* of causing physical injury to another person, the person causes serious physical injury to any person; . . . or
>
> (3) [t]he person *recklessly* causes serious physical injury to another person by means of a deadly weapon[.]

Ark. Code Ann. § 5-13-202 (emphasis added). The term "deadly weapon" is defined by the Arkansas Criminal Code, in pertinent part, as "anything that in the manner of its use or

7

intended use is capable of causing death or serious physical injury." Ark. Code Ann. § 5-1-102.

The Court finds that a glass thrown down at a table, or at a person's face, is capable of causing serious physical injury, and possibly even death. As a result, the requirement of the statute regarding the Defendant's intent could have been satisfied in this case by a finding that the actions were either purposeful (Ark. Code Ann. § 5-13-202(1)) or reckless (Ark. Code Ann. § 5-13-202(3)).[4] However, for an action to be "willful and malicious" under § 523(a)(6), the actor must consciously desire that the injury occur; recklessness will not suffice. Therefore, it was not essential to the Criminal Judgment that the offender's actions were willful and malicious, and the Court is not precluded by the Criminal Judgment from making that determination.[5]

## 2. *The Civil Judgment*

The second element of collateral estoppel – the issue must have been litigated in the prior action – is not present in the Civil Judgment. The "actually litigated" element is not met as to issues that the parties stipulated to in the prior action. *United States v. Young*, 804

---

[4] The Plaintiff's attorney alleged at the trial that the conviction was based on the purposeful requirement of the statute (Ark. Code Ann. § 5-13-202(1)) but no evidence was placed in the record to support this assertion.

[5] The Court also notes that under Arkansas law, the Criminal Judgment would not meet the "actually litigated" requirement of collateral estoppel. *See Bradley Ventures, Inc. v. Farm Bureau Mut. Ins. Co. of Arkansas*, 371 Ark. 229, 264 S.W.3d 485 (2007) ("[W]e hold that a guilty plea in a criminal case is not equivalent to a criminal conviction that has been 'actually litigated.' We hold that 'actually litigated' means actually litigated.").

F.2d 116, 118 (8th Cir. 1986) ("A fact established in prior litigation not by judicial resolution but by stipulation has not been 'actually litigated' and thus is the proper subject of proof in subsequent proceedings."). *See also Lovell v. Mixon*, 719 F.2d at 1376 ("Thus, the application of collateral estoppel or issue preclusion is limited to those matters previously at issue which were directly and necessarily adjudicated."). The basis for this rule is that "if preclusive effect were given to issues not litigated, the result might serve to discourage compromise, to decrease the likelihood that the issues in an action would be narrowed by stipulation, and thus to intensify litigation." *Otherson v. Dep't of Justice, I.N.S.*, 711 F.2d 267, 274-75 (D.C. Cir. 1983).[6]

On July 10, 2009, Mr. Hidy filed a civil lawsuit (CV-2009-221-2) against Mr. Bullard in the Circuit Court of Independence County, Arkansas, for the intentional tort of battery. On August 31, 2010, a jury trial was held in that action, which resulted in a judgment against Mr. Bullard. However, prior to that trial, the Defendant stipulated to the liability portion of the action. The civil trial was held only to determine the amount of damages. Therefore, the

---

[6] For purposes of clarity, the Court notes the distinction in the law that, under Arkansas law, issues decided in a default judgment are treated as "actually litigated." *In re Hudson*, 428 B.R. at 870 (citing *Reyes v. Jackson*, 43 Ark. App. 142, 861 S.W.2d 554, 555 (1993)). However, although settlements may resolve a case without actual litigation, the Eighth Circuit has held that the doctrine of collateral estoppel does not apply to issues decided by stipulation or agreement. *Young*, 804 F.2d at 118; *Gall v. South Branch Nat'l Bank,* 783 F.2d 125, 127 (8th Cir.1986) (observing that the doctrines of *res judicata* and collateral estoppel are inapplicable when the issues sought to be precluded in a subsequent proceeding were determined by stipulation or a consent judgment). *See also Coates v. Kelley*, 957 F. Supp. 1080, 1084-85 (E.D. Ark. 1997) ("[T]he general rule is that a consent judgment has no issue-preclusive effect unless it is clearly shown that the parties intended to foreclose a particular issue in future litigation.").

Civil Judgment does not have a preclusive effect favorable to the Plaintiff in this case because the determination relevant to this proceeding – the nature of the act resulting in the injury – was not "actually litigated."

### B. NON-DISCHARGEABILITY PURSUANT TO 11 U.S.C. § 523(a)(6)

The Bankruptcy Code excepts certain debts from a debtor's discharge. Particularly, § 523(a)(6) excepts from discharge any debt created as the result of a "willful or malicious injury." 11 U.S.C. § 523(a)(6). As used in § 523(a)(6), the terms "willful" and "malicious" are viewed as two separate elements, each of which must be shown by a preponderance of the evidence. *Johnson v. Miera (In re Miera)*, 926 F.2d 741, 743 (8th Cir. 1991); *In re Scarborough*, 171 F.3d at 641. Further, the definition of these elements must be narrowly construed against the objecting creditor and in favor of the debtor. *In re Boyd*, 347 B.R. 349, 356 (Bankr. W.D. Ark. 2006); *In re Pierson*, 17 B.R. 822, 823 (Bankr. D. Minn. 1982) ("The rules governing dischargeability are narrowly construed in order to give effect to the purpose of the Bankruptcy Code which is to give the debtor a fresh start.").

#### 1. *Willful*

In the context of § 523(a)(6), the term "willful" means deliberate or intentional. *Kawaauhau v. Geiger (In re Geiger)*, 523 U.S. 57, 61, 118 S.Ct. 974, 977, 140 L.Ed.2d 90 (1998); *In re Scarborough*, 171 F.3d at 641; *In re Richmond*, 430 B.R. 846, 867 (Bankr. E.D. Ark. 2010). In the statutory text, the word "willful" precedes the word "injury," which led the Supreme Court, in *Geiger,* to interpret "willfulness" as requiring "a deliberate or

intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *In re Geiger,* 523 U.S. at 61-62 (emphasis in original).

At least in the Eighth Circuit, the definition of willfulness has been expanded to include not only desired results, as set out by the Supreme Court in *Geiger*, but also those consequences that the actor believed were substantially certain to occur. *In re Geiger,* 113 F.3d 848, 852-53 (8th Cir. 1997), *aff'd*, 523 U.S. 57; *In re Shahrokhi,* 266 B.R. 702, 708 (B.A.P. 8th Cir. 2001) (applying the Restatement's "substantially certain" language); *In re Porter*, 375 B.R. 822, 827 (B.A.P. 8th Cir. 2007). The willfulness standard is not met, however, where the inflicted injury results from actions done in a reckless or negligent manner. *In re Geiger*, 523 U.S. at 64.[7]

In addition to determining that the actions were willful, the Court must also determine whether the action caused an injury. After all, there can be no consequence for a willful act, at least under § 523(a)(6), if there is no subsequent injury. Injury is defined as "the invasion of any legally protected interest of another." *In re Nagle*, 257 B.R. 276, 282 (B.A.P. 8th Cir.

---

[7] A comment from the Restatement (Second) of Torts is particularly instructive in distinguishing between the states of mind referenced above:

> All consequences which the actor desires to bring about are intended. . . . Intent is not, however, limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result. As the probability that the consequences will follow decreases, and becomes less than substantial certainty, the actor's conduct loses the character of intent, and becomes mere recklessness. . . . As the probability decreases further, and amounts only to a risk that the result will follow, it becomes ordinary negligence.

Restatement (Second) of Torts § 8A cmt. b (1965).

11

2001) (quoting the Restatement (Second) of Torts § 7(1) (1965)), *rev'd on other grounds,* 274 F.3d 481; *In re Geiger*, 113 F.3d 848, 852 (8th Cir. 1997) ("[T]he word 'injury' usually connotes legal injury (*injuria*) in the technical sense, not simply harm to a person.").

Thus, in this case, in order for the Court to determine that the Defendant willfully injured the Plaintiff, the Court must conclude that the Defendant intended, or believed his actions were substantially certain, to invade a legally protected interest of the Plaintiff. The Court finds that this requirement was met. Mr. Bullard testified that he threw the glass. From this it is established that his actions cannot be considered negligent, and the line that remains to be drawn is the one dividing intentional acts (or substantially certain consequences) from reckless acts. In order to make this determination, the Court must evaluate the probability of the consequences that would result from the action taken.

In addition to admitting that he threw the glass, Mr. Bullard testified that he did so out of frustration with Mr. Hidy's comments. His description of this action invokes the understanding that the glass was thrown down at the table with force, as opposed to hitting the table after an ineffectual toss. At a minimum, this demands the conclusion that the glass was likely to shatter upon impact with the table. Further, the testimony allowed that the table was, at most, six feet in diameter, and was in large part surrounded by other members of the group.[8] Mr. Hidy was positioned opposite Mr. Bullard at the table. Moreover, Mr. Bullard stated in his testimony that he knows that by throwing the glass he "took a chance of hitting

---

[8] Although an exact number of the group was not provided, the Court understood that gathering to consist of more than the three patrons specifically named in the fact of this case.

12

anybody." Given these facts, the Court finds that Mr. Bullard was aware that the results of his conduct in throwing the glass would be substantially certain to injure Mr. Hidy.[9] As such, Mr. Bullard willfully injured Mr. Hidy.

### 2. *Malicious*

The second requirement of § 523(a)(6) – that the act was a malicious one – is defined as conduct "targeted at the creditor with intent to harm or with substantial certainty that the harm would occur." *In re Hamilton*, 390 B.R. 618, 631 (Bankr. E.D. Ark. 2008); *In re Waugh,* 95 F.3d 706, 711 (8th Cir. 1996); *In re Long*, 774 F.2d 875, 881 (8th Cir. 1985). Thus, the mental state required for a person to have an intent to harm is that of a desire to cause the harm, or a belief that the harm is substantially certain to result. *Long,* 774 F.2d at 881 ("Malice . . . must apply to conduct more culpable than that which is in reckless disregard of the creditor's economic interests and expectancies."). "[C]ircumstantial evidence of the debtor's state of mind [can] be used to ascertain whether malice existed." *Miera,* 926 F.2d at 744; *see also In re Long,* 774 F.2d at 881 ("Use of objective information to ascertain intent to cause harm is by no means unfamiliar.").

At first glance, it appears that there is very little left after the Supreme Court's interpretation of willfulness in *Geiger* to distinguish between the "willful" and "malicious" requirements. *In re Wehri,* 212 B.R. 963, 969 (Bankr. D.N.D. 1997) ("[I]t appears the former definition of maliciousness has been subsumed by the newly expanded definition of

---

[9] The Court notes that in this context, the term injury only establishes an invasion of a legally protected interest. *In re Nagle*, 257 B.R. at 282, *supra*.

13

willfulness."). Yet, courts within the Eighth Circuit have continuously expressed that the "malicious" language must maintain some meaning independent of "willfulness." *See In re Porter*, 375 B.R. 822, 827 (B.A.P. 8th Cir. 2007); *In re Logue*, 294 B.R. 59, 63 (B.A.P. 8th Cir. 2003) ("The debtor's knowledge that he or she is violating the creditor's legal rights is insufficient to establish malice absent some additional aggravated circumstances."); *In re Noventy*, 226 B.R. 211, 218 (Bankr. D.N.D. 1998) ("The element requires a heightened level of culpability which transcends mere willfulness.") (citation omitted).

The courts have distinguished the terms by analyzing the definition of each term with particularity. Specifically, the definition of the term "willful" focuses on the creation of an injury. *See e.g., In re Geiger,* 523 U.S. at 61-62 ("a deliberate or intentional *injury*"). As discussed above, the Eighth Circuit defines an "injury" is defined as "the invasion of any legally protected interest of another." *In re Geiger*, 113 F.3d at 852; *In re Nagle*, 257 B.R. at 282. Meanwhile, the definition of the term "malicious" focuses on the creation of a harm. *See e.g., In re Waugh,* 95 F.3d at 711 ("conduct . . . certain or almost certain to cause *harm*.") (emphasis added). Harm is defined as the "existence of loss or detriment in fact of any kind to a person resulting from any cause." *In re Stage*, 321 B.R. 486, 493 (B.A.P. 8th Cir. 2005) (quoting the Restatement (Second) of Torts § 7(2)). Thus, in order to prevail, a plaintiff must establish that there was an intent to cause an injury (willfulness), and an intent to cause a harm (maliciousness).[10]

---

[10] An alternate interpretation exists which gives the "malicious" requirement a more limited function in the analysis. Some courts have defined the term to mean that the "willful" act

14

In summary, the Court quotes the following passage from the case of *In re Porter*, wherein the court explained the post-*Geiger* standard of both willfulness and maliciousness:

> [I]f the debtor was aware of the plaintiff-creditor's right under law to be free of the invasive conduct of others (conduct of the sort redressed by the law on the underlying tort) and nonetheless proceeded to act to effect the invasion with particular reference to the plaintiff, wilfulness is established. If in so doing the debtor intended to bring about a loss in fact that would be detrimental to the plaintiff, whether [the] specific sort of loss the plaintiff actually suffered or not, malice is established.

*In re Porter*, 375 B.R. at 828 (quoting *In re Langeslag*, 366 B.R. 51, 59 (Bankr. D. Minn. 2007)).

There was a meager amount of evidence submitted to the Court in this case, and the Court finds that it was insufficient to support a conclusion that the Defendant's actions were malicious. The evidence consisted of the testimony of the Plaintiff, the testimony of the Defendant, the Civil Judgment, and the plea agreement for the Criminal Judgment.[11] From this evidence, the Court was required to determine whether the Defendant intended, or was

---

must be "without just cause or excuse." *In re Slominski*, 229 B.R. 432, 437 (Bankr. D.N.D. 1998) ("Malice . . . withdraw[s] from the discharge exception obligations arising from acts done knowing that injury is a substantially certain consequence, but done for reasons that justify or excuse the act."); *In re Jeffries,* 378 B.R. 248, 255-56 (Bankr. W.D. Mo. 2007) ("A finding of malice does not require a finding of ill will, but rather a lack of just cause or excuse."). However, the Court could not locate any implementation of this standard, beyond mere repetition, in a case within the Eighth Circuit post-*Geiger*. Given the limited function of the term when defined in this manner, the passive utilization of this interpretation by the courts, and the requirement that we construe the definition to promote the purpose of giving the debtor a fresh start, the Court elects to use the more prevalent of the two interpretations.

[11] The Plaintiff states in his post-trial brief that the Judgment and Disposition Order from the criminal case were admitted into evidence during the trial. The Court notes for the record that the only evidence received regarding the criminal case was the Defendant's criminal plea agreement.

at least substantially certain, that harm would result from his actions.

The Court found the testimony of both parties to be credible. However, despite their observed credibility the parties' accounts of the incident contradict each other, and the Court was afforded no scenario in which the two explanations could be reconciled.[12] The Plaintiff's account of the incident was that he only became involved in the conversation between Mr. Bullard and Mr. Stephens at the point that Mr. Bullard became belligerent. Mr. Hidy recalled that he told Mr. Bullard that "he better watch himself," to which Mr. Bullard responded that he was watching himself. Mr. Bullard then threw his glass. According to Mr. Hidy, this glass was thrown directly at him, and the glass shattered on impact with either his face, or with an arm that he put up to block it. Mr. Hidy testified that he believed Mr. Bullard was trying to hit him with the glass.

However, according to Mr. Bullard, the conversation between himself and Mr. Stephens was nothing more than a "debate." By Mr. Bullard's recollection, the conversation had been ongoing for a period of 30 to 45 minutes before the incident took place, and Mr. Hidy had been involved in the conversation the entire time. Mr. Bullard testified that he only stood up and threw the glass because he was frustrated by harassing comments made by Mr. Hidy throughout the conversation. It was Mr. Bullard's testimony that when he threw the glass, he threw it down at the table, not at Mr. Hidy.

---

[12] The Court is fully aware that each party has endured a great amount of suffering because of this incident. Mr. Hidy has lost vision and suffered scarring to his right eye, and has been forced to suffer through numerous medical procedures. Mr. Bullard testified that due to the incident, he lost his friends, his home, his job, and nearly his life in an attempted suicide.

16

There is no doubt that Mr. Bullard threw the glass out of frustration. And, if Mr. Bullard threw the glass at Mr. Hidy, then there can be no other conclusion than that Mr. Bullard was aware of the substantial certainty of harm that would result to Mr. Hidy, and his actions must be deemed malicious. However, from the testimony alone the Court cannot determine whether Mr. Bullard threw the glass at Mr. Hidy, or at the table. Thus, the Court must rely on its evaluation of the circumstantial evidence to determine which account, if either, is accurate. The circumstantial evidence to be considered in this case consists of the circumstances surrounding the Criminal Judgment and the Civil Judgment.

Mr. Bullard pled guilty to a criminal charge of battery in the second degree. On its face, the Criminal Judgment carries very little persuasive weight because the criminal statute only requires the offender to have acted recklessly, as explained in the Court's discussion of collateral estoppel, *supra*. Additionally, Mr. Bullard explained that he entered the guilty plea because he did not feel that he would receive a fair trial, and because he wished to avoid the uncertainty and expense of a trial.

With regard to the Civil Judgment, the Plaintiff's decision to stipulate to the liability determination in the case weighs in favor of a finding that his actions were malicious. However, the evidentiary value of this stipulation was more than outweighed by the jury's determination, after a full trial in which testimony and documentary evidence were presented, that an award of punitive damages was not warranted.

Even viewing the evidence as a whole, the Court was not able to conclude, by a

preponderance of the evidence, that Mr. Bullard threw the glass at Mr. Hidy. This finding should not be taken to cast doubt on Mr. Hidy's account of the incident, but instead is based on a lack of evidence.[13] When the evidence is not sufficient to allow the Court to make a determination, the detriment falls to the party with the burden of proof. Mr. Hidy had the burden of going forward with the evidence, and failed to meet that burden. In order to except a debt from discharge pursuant to § 523, the Plaintiff must prove that the Defendant's actions were both willful and malicious. Because there was not sufficient evidence for the Court to find that the Defendant's actions were malicious, the requirements of § 523(a)(6) are not satisfied, and the debt is not excepted from discharge.

### C. 11 U.S.C. § 727

In the Complaint, the Plaintiff objects to the Defendant receiving a discharge, pursuant to 11 U.S.C. § 727. The Plaintiff cited no specific subsection of § 727 on which the Court might base a denial of discharge, and provided no evidence to support his broad objection at the trial or in his post-trial brief. As such, the Plaintiff's objection to the Defendant's discharge is denied.

---

[13] The Court noted the absence in the record of evidence that might have assisted in this determination. For example, no part of the record from the civil trial, which included witnesses and documentary evidence, was provided; there were multiple witnesses to the event, yet only the Plaintiff and Defendant provided testimony; the police report from the criminal prosecution was not admitted; and the jury instructions regarding punitive damages were not presented. While the Plaintiff may have had good, legitimate reasons for withholding this evidence, without it the record was insufficient to make a determination in his favor.

## CONCLUSION

The Court finds that it was not precluded from making the determination of whether the action was "willful" and "malicious" by the doctrine of collateral estoppel. Further, the Court finds that there was insufficient proof to determine whether the Defendant's actions were malicious, and as such, the Plaintiff's judgment debt is not excepted from discharge pursuant to 11 U.S.C. § 523(a)(6). Additionally, the Court finds no basis for denying the Debtor a discharge pursuant to 11 U.S.C. § 727.

A separate judgment in accordance with this Memorandum Opinion will be entered by the Court.

**IT IS SO ORDERED.**

Audrey R. Evans
United States Bankruptcy Judge
Dated:   01/21/2011


cc:    Thomas Lindsey Castleberry, Counsel for Plaintiff
       Paul A. Schmidt, Counsel for Defendant
       Trustee
       U.S. Trustee