# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

————————

No. 11-6009

————————

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Marty K. Bullard, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| Jonathan D. Hidy, | * | Appeal from the |
| | * | United States |
| Plaintiff - Appellant, | * | Bankruptcy Court for the |
| | * | Eastern District of Arkansas |
| v. | * | |
| | * | |
| Marty K. Bullard, | * | |
| | * | |
| Defendant - Appellee. | * | |

————————

Submitted: May 18, 2011
Filed: June 14, 2011

————————

Before SCHERMER, FEDERMAN and VENTERS, Bankruptcy Judges

SCHERMER, Bankruptcy Judge

Plaintiff, Jonathan D. Hidy (the "Creditor") appeals from the judgment of the bankruptcy court[1] holding that a debt of Marty K. Bullard (the "Debtor") to the Creditor was not excepted from the Debtor's discharge pursuant to § 523(a)(6) of Title 11 of the United States Code (the "Bankruptcy Code").[2]  The bankruptcy court first explained that collateral estoppel did not preclude it from deciding whether the Debtor's actions met the requirements of § 523(a)(6), and then found that the Debtor's actions were "willful," but they were not "malicious" as required by § 523(a)(6).  We have jurisdiction over this appeal from the final judgment of the bankruptcy court. *See* 28 U.S.C. § 158(b).  For the reasons set forth below, we affirm.

## ISSUES

The first issue on appeal is whether collateral estoppel applies based on the criminal action or the civil action to bar relitigation of the issues of willfulness and maliciousness in the bankruptcy court.  With respect to the civil action, we specifically examine the Creditor's argument that the action was essentially adjudicated by the Arkansas state court based on an admission of liability or failure to contest liability on summary judgment.  If collateral estoppel did not apply, the second issue is whether the bankruptcy court properly denied the Creditor's request to except the debt owed to him by the Debtor from the Debtor's discharge pursuant to § 523(a)(6) based on a lack of finding of maliciousness.  Because we affirm the bankruptcy court's decision that collateral estoppel was inapplicable and we do not see clear error in the bankruptcy court's finding that the Debtor did not act with maliciousness for the purposes of § 523(a)(6), the debt owed by the Debtor to the Creditor is not excepted from the Debtor's discharge.

---

[1]    The Honorable Audrey R. Evans, United States Bankruptcy Judge for the Eastern and Western Districts of Arkansas.

[2]    As a part of the Judgment, the bankruptcy court also held that there was "no basis for denying the Debtor a discharge pursuant to 11 U.S.C. §727."  The Creditor has abandoned the § 727 argument on appeal by virtue of his failure to include that issue in his statement of issues on appeal or in his brief.

-2-

## BACKGROUND

The Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on April 21, 2010. This appeal arises from the bankruptcy court's decision rendered in an adversary proceeding filed by the Creditor seeking to except the debt owed by the Debtor to him with respect to a pre-bankruptcy incident from the Debtor's discharge pursuant to §§ 523(a)(6) and 727.

Aside from some preliminary facts, the Debtor and the Creditor provide different reports of the evening in question when the Debtor allegedly maliciously injured the Creditor. The parties agree that they ate dinner and consumed drinks at a restaurant with coworkers and friends and that they then went to a different restaurant to have more drinks. They also agree that the friends and co-workers remained at the second establishment for several hours, drinking and conversing at a tiki style bar table that was between four and six feet long, and that the bar had a thatched style roof.

According to the Creditor, the Debtor and a third party were in a heated argument and when the Debtor began acting belligerently, the Creditor told the Debtor to "watch himself." The Creditor testified that the Debtor replied that he was watching himself, the Debtor then threw a glass directly at the Creditor and the glass shattered either when it hit the Creditor's face or when it hit an arm he had put up to block the glass.

The Debtor maintains that his conversation with not "heated" and that the Creditor was involved in the conversation. He explained that he threw the glass out of frustration. According to the Debtor, he could not have directed his throwing of the glass at the Creditor because he was standing and his view of the Creditor was blocked by the thatched roof. Rather, he said he threw the glass down at the table. He did not intend to hit anyone with the glass, but he recognized at trial that by throwing the glass, he "took the chance of hitting anybody." The Debtor explained that he is sorry

that this incident took place, he has lost his job and friends as a result of the incident and he even tried to commit suicide because of it.

After the Debtor threw the glass, it broke and a piece of it went into the Creditor's eye. The Debtor and Creditor then engaged in a brief physical altercation until the Debtor realized that the Creditor was bleeding. The Creditor went immediately to the hospital and after having three or four surgeries, the Creditor ultimately lost all vision in his right eye.

Criminal charges were filed against the Debtor and he eventually pled guilty to the criminal charge of battery in the second degree, stating that part of the reason why he entered the guilty plea was because he did not think that he would have a fair trial and also that he wished to avoid the uncertainty and expense of trial. The Debtor was sentenced to five years of probation and ordered to pay a $3,000 fine.

While the criminal case was pending, the Creditor filed a civil action for the tort of intentional battery against the Debtor in Arkansas state court. The Debtor stipulated to liability and, accordingly, a jury trial was held only on the issue of damages. The jury awarded the Creditor compensatory damages totaling $204,204.11, comprised of: (1) $75,000 for permanent injuries; (2) $84,204.11 for medical bills; (3) $10,000 for pain, suffering and mental anguish; and (4) $35,000 for scars, disfigurement and visible results of the injury. The parties stipulated at trial in the bankruptcy court to the fact that even though the Judgment in the civil action did not explain the jury's decision regarding punitive damages, the jury was instructed on punitive damages and decided to not make a punitive damage award.

## STANDARD OF REVIEW

We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. Application of collateral estoppel is an issue of law that is reviewed de novo. *Jamrose v. D'Amato (In re D'Amato)*, 341 B.R. 1, 3 (B.A.P. 8th Cir. 2006) (citation omitted); *Jacobus v. Binns (In re Binns)*, 328 B.R. 126, 127

-4-

(B.A.P. 8th Cir. 2005) (citing *Manion v. Nagin*, 392 F.3d 294, 300 (8th Cir.2004)). "The bankruptcy court's determination of whether a party acted willfully and maliciously inherently involves inquiry into and finding of intent, which is a question of fact." *Waughn v. Eldridge (In re Waughn)*, 95 F.3d 706, 710 (8th Cir. 1996)(citation omitted). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *U.S. v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). We give due regard to the bankruptcy court's opportunity to judge the credibility of witnesses. Fed. R. Bankr. P. 8013.

## DISCUSSION

Section 523(a)(6) of the Bankruptcy Code excepts from discharge debts "for willful and malicious injury by the debtor to another entity or the property of another entity." A party opposing the dischargeability of a debt must prove separately that the debt is for a "willful injury" and for a "malicious injury." *Blocker v. Patch (In re Patch)*, 526 F.3d 1176, 1180 (8th Cir. 2008) (citing *Fischer v. Scarborough (In re Scarborough)*, 171 F.3d 638 (8th Cir. 1999)). Such proof is required by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 291 (1991).

The Supreme Court has ruled that the term "willful" under § 523(a)(6) requires "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaaihua v. Geiger*, 523 U.S. 57, 61 (1998). It stated that "the [§ 523](a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts." *Id*. at 61. Satisfaction of the "willful" element "requires proof that the debtor desired to bring about the injury or was, in fact, substantially certain that his conduct would result in the injury that occurred." *Patch*, 526 F.3d at 1180-81 (citing *Geiger v. Kawaauhua (In re Geiger)*, 113 F.3d 848, 852-54 (8th Cir. 1997) (en banc), *aff'd*, 523 U.S. 57 (1998)). To be willful, an injury is "a deliberate or intentional invasion of the legal rights of another,

-5-

because the word 'injury' usually connotes legal injury (*injuria*) in the technical sense, not simply harm to a person." *Geiger*, 113 F.3d at 852.  For the purposes of § 523(a)(6), "maliciousness" is defined as "conduct 'targeted at the creditor . . . at least in the sense that the conduct is certain or almost certain to cause . . . harm.' " *Sells v. Porter (In re Porter)*, 539 F.3d 889, 894 (8th Cir. 2008) (citations omitted).

## Collateral Estoppel

As the bankruptcy court correctly noted, it would have been precluded by the doctrine of collateral estoppel from making a determination under § 523(a)(6) if "willfulness" and "maliciousness" of the Debtor's actions were determined in the state court criminal or civil actions.

Collateral estoppel may apply in a dischargeability action brought under § 523 of the Bankruptcy Code. *Grogan,* 498 U.S. at 285 n.11 (1991).  The substantive law of the forum state applies to determine the collateral estoppel effect of a state court judgment.  *See Scarborough*, 171 F.3d at 641; 28 U.S.C. § 1738; *State of Minn. v. Moretto (In re Moretto)*, 440 B.R. 534, 538 (B.A.P. 8th Cir. 2010).  The elements of collateral estoppel in Arkansas are: "(1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) that issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the judgment." *Powell v. Lane*, 289 S.W.3d 440, 444 (Ark. 2008) (citing *State Office of Child Support Enforcement v. Willis,* 59 S.W.3d 438 (2001)).  As the party seeking the application of collateral estoppel, the Creditor bears the burden of proving its elements.  *See First Sec. Bank v. Hudson (In re Hudson)*, 428 B.R. 866, 869 (Bankr. E.D. Ark. 2010) (citations omitted); *Colonia Ins. Co. v. City Nat'l Bank,* 13 F.Supp.2d 891, 903 (W.D. Ark. 1998) (citation omitted).

-6-

Criminal Action

We agree with the bankruptcy court's decision that the judgment in the criminal action did not apply to bar the bankruptcy court action because the issues in the dischargeability action were not essential to the judgment in the criminal action.[3] The relevant Arkansas statute governing battery in the second degree, the crime to which the Debtor pled guilty, ARK. CODE ANN. § 5-13-202, provides, in pertinent part, that:

> (a) A person commits battery in the second degree if:
>
> (1) With the purpose of causing physical injury to another person, the person causes serious physical injury to any person;  [or]
>
> (3) The person recklessly causes serious physical injury to another person by means of a deadly weapon[.]

ARK. STAT. ANN. § 5-13-202.  Arkansas law defines the phrase "deadly weapon" to mean:

> (A) A firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious physical injury; or
>
> (B) Anything that in the manner of its use or intended use is capable of causing death or serious physical injury[.]

---

[3]     The Creditor identified as an issue on appeal whether the Debtor's guilty plea in the criminal action barred him from asserting that his actions were not willful or malicious, but his appellate brief did not discuss the collateral estoppel effect, if any, that the guilty plea had in his dischargeability action.

-7-

ARK STAT. ANN. § 5-1-102.  As the bankruptcy court recognized, a glass thrown as the Debtor threw his glass could cause death or serious physical injury.  Accordingly, the criminal action could have been decided based on a finding that the Debtor's acts were *either* purposeful *or* reckless.  *See* ARK. CODE ANN. § 5-13-202(a)(1) and (3).  Mere recklessness would not support an action under § 523(a)(6).  *See Geiger*, 523 U.S. at 64.

<u>Civil Action</u>

The bankruptcy court explained that the issues of willfulness and maliciousness were not "actually litigated" in the civil action for the purposes of collateral estoppel because the Debtor stipulated to liability in that action.  In his brief on appeal, the Creditor agrees with the bankruptcy court that stipulation or consent would not give rise to collateral estoppel and, accordingly, we do not address that issue.[4]  The Creditor claims, however, that even though the matter of liability was not presented to the jury, the Debtor's liability was decided during "the summary judgment phase" of the civil action.  He argues that "no stipulation or consent order" was entered and the issue of liability was determined by admission or lack of contest by the Debtor, rather than by "agreement or consent."  According to the Creditor, the action was "in essence" adjudicated by the Arkansas state court because the issue was "taken before the Arkansas [c]ourt" and that court granted summary judgment on "the issue of liability."

Assuming that, for the purposes of collateral estoppel in this case, we were to draw a legal distinction between whether the Debtor stipulated to the issue of liability or whether it was admitted or uncontested in response to a motion for summary judgment, the Creditor has not proven that the Debtor's liability in the civil action was admitted or uncontested on summary judgment, rather than agreed to by stipulation.

---

[4]       Specifically, the Creditor states that the bankruptcy court "correctly pointed out that, under Arkansas law, stipulation or consent does not give rise to collateral estoppel. . . ."

-8-

*Hudson*, 428 B.R. at 869 (party asserting collateral estoppel bears burden of proof). The bankruptcy court stated that the Debtor "stipulated to liability for battery in the civil lawsuit . . ." The evidence provided to the bankruptcy court regarding the civil action was sparse. The complaint and summary judgment pleadings from the civil action were not provided. In addition, as the bankruptcy court noted, the Creditor did not provide "the record from the civil trial, which included witnesses and documentary evidence." The Judgment in the civil action does not assist the Creditor's position. It states that the jury found that the Creditor was entitled to judgment "[b]ased upon the proof presented, the argument of counsel and other matters. . ." and then listed certain amounts of damages. The testimony given at the trial before the bankruptcy court also did not prove that the bankruptcy court erred when it noted that the Debtor "stipulated to the liability portion of the [civil] action." Accordingly, we cannot consider whether collateral estoppel should apply based on the Creditor's argument that liability was "in essence" adjudicated by the state court on summary judgment based on an alleged admission or lack of contest by the Debtor, rather than being stipulated to by the Debtor.

## 11 U.S.C. § 523(a)(6)

To except the Debtor's debt to the Creditor from the Debtor's discharge, the bankruptcy court would be required to find a "willful and malicious injury" by the Debtor under § 523(a)(6). This appeal focuses on the bankruptcy court's determination that the Creditor did not meet its burden of proving maliciousness.[5]

The bankruptcy court heard the testimony of the Debtor and the Creditor and, even though each gave a different account of the incident, it found both witnesses to be credible. Because the testimony of the parties was insufficient for the bankruptcy

---

[5]      We do not address the bankruptcy court's finding of willfulness because the Creditor agrees with the bankruptcy court's determination and in this appeal the Debtor has not argued that the finding of willfulness was improper.

-9-

court to determine whether the Debtor threw the glass directly at the Creditor or, instead, at the table, it was required to make its decision based on the circumstantial evidence. It was proper for the court to consider circumstantial evidence regarding the debtor's state of mind. *Johnson v. Miera (Miera)*, 926 F.2d 741, 744 (8th Cir. 1991) (citing *Barclays Am./Bus. Credit, Inc. v. Long (In re Long),* 774 F.2d 875, 881 (8th Cir. 1985)). But the evidence introduced at trial was scant. Other than the testimony of the Debtor and Creditor, the only items introduced were the Judgment in the civil action and the plea agreement for the Judgment in the criminal action.[6] We cannot say that the bankruptcy court clearly erred in its assessment that the Debtor lacked malicious intent in light of the circumstances surrounding the entry of the criminal and civil Judgments. It explained that the Judgment in the criminal action carried little weight for the Creditor because the criminal statute only required recklessness by the Debtor and the Debtor entered the guilty plea because he did not believe he would receive a fair trial and he wished to avoid the uncertainty of the trial. With respect to the Judgment in the civil action, it appropriately gave weight to the Debtor's stipulation of liability and then explained why the jury's decision that punitive damages should not be awarded outweighed the weight given to the stipulation of liability. The bankruptcy court carefully reviewed the limited information before it and found that the Creditor had not provided enough evidence for it to find that the Debtor threw the glass at him. We are not left with the impression that a mistake has been made.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the bankruptcy court.

---

[6]      The Creditor included in his appendix on appeal a copy of the criminal plea agreement and a copy of the Judgement and Disposition Order from the criminal action. In its Memorandum Opinion, the bankruptcy court noted that "the only evidence received regarding the criminal case was the [Debtor's] criminal plea agreement."